PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAIMUNDO SANTIAGO, Defendant and Appellant.

No. 7336. Argued January 12, 1939.—Decided January 27, 1939.

*R. Martínez Nadal, C. H. Juliá & Gladys Lasa,* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On March 21, 1938, the judge of the District Court of Arecibo issued a warrant of arrest against Raimundo Santiago, ordering him to appear before the court on the first day of April, to show cause why he should not be punished for contempt of court committed on the day aforesaid, because he falsely testified under oath in the case of *The People* v. *Cruz Román,* for murder in the first degree.

Santiago appeared before the court and set up the insufficiency of the order as a matter of law, and as a question of fact:

".... that if any conflict existed between his two declarations made before this honorable court when he was called upon to tell the truth as to what he had seen on the day in which the incident occurred that gave rise to the complaint filed by the Hon. District Attorney against Cruz Román and José Lugo, said conflict was due to the time elapsed between his first and second declaration; that he was not given an actual opportunity to refresh his recollection, for even

though the stenographer read him his first declaration he heard his words while in such a state of nervousness, on account of his position as a public officer, inasmuch as he thought that his apparent contradiction might be interpreted in a light damaging to his good name and honesty as such officer.''

Evidence for and against the defendant was introduced, and the court, on June 24, 1938, rendered a judgment of conviction. Feeling aggrieved Santiago appealed. He argues in his brief that the judgment rendered is against the weight of the evidence. In his report the Prosecuting Attorney of this Supreme Court manifests his conformity with the contention of the appellant, and prays for a reversal of the judgment.

The judgment reads as follows:

''This prosecution was brought under Act No. 9 of 1911 (Session Laws) which provides for summary punishment for perjury committed in open court and for other purposes.

The defendant testified as a witness of the district attorney in the case of *The People* v. *Cruz Román Rodríguez et al.,* for murder. Two hearings were had in that case for the defendants prayed for separate trials.

''At the second trial witness Raimundo Santiago, who is the defendant in the instant prosecution for perjury committed in open court, testified that upon hearing a few shots he ran to the place where he heard them, and that there he saw two men (the defendants) who were running along an alley in back of the town that leads to the Barceloneta road, and that he saw one of them carrying a weapon.

''At the first trial the defendant at bar, Raimundo Santiago, testified that each of the two defendants of the murder charge, that is, José Lugo and Cruz Román, was carrying a weapon.

''Upon noticing the contradiction the district attorney gave to the defendant an apportunity to correct his testimony, telling him that he had testified at the first trial that each of the two defendants was carrying a weapon, and the stenographer even read him his former declaration.

''However, the defendant in the case at bar did not correct his declaration and merely repeated over again that if he had so testified he did not now remember.

''At the hearing for contempt the second declaration duly certified by the stenographer was offered in evidence, and to gain time

the defendant admitted and was set forth in the record, that he had testified in the first trial that each of the two defendants of murder charge had a weapon. One of the defendants of said murder charge was found guilty in the first trial; and in the second trial the other one was acquitted; being the one that Raimundo Santiago testified was not carrying a gun.

"The defense raised a legal objetion to the effect that the court's order did not allege that the words uttered by the defendant were false, nor that they were uttered knowing them to be false.

"In a prosecution of this sort, if it is true that the defendant must be notified of the grounds therefor through an order, we do not think that the same strict rules apply as do in the case of an information or complaint; but even admitting it to be so, in the warrant issued by this court it was clearly stated that the witness swore to tell the truth and that contrary thereto, he testified that he saw two men running from the scene and that only one of them was carrying a gun, even though he had testified on November 1, 1937, in another trial of the same case, that he had seen two men carrying guns in their hands.

"That these phrases clearly charge an intention to testify against his oath, inasmuch as they are two sworn declarations that are substantialy in conflict, and, as a matter of logic, we must establish as a basis, at least *prima facie*, that one of them is not true.

"Furthermore, the order was issued after the defendant was given an opportunity to explain his conduct and after the stenographer had read him his first declaration. His instant allegation to the effect that the order did not state that what he had said was false, is academical.

"The nature of the case at bar is serious, especially since we are dealing with a policeman; but bearing in mind that the accused is an officer that has served the government for many years, and according to reports, has been also in the Customs service, the court will be lenient and is in favor of any steps that the district attorney may take in order to avoid drastic action by the chief of police against the defendant. However, our judgment must be of conviction, because an acquittal in this case would be a fatal precedent.

"For the above stated reasons the defendant is found guilty, and as he has requested us not to pronounce judgment until to-day, we do so now and adjudge him to pay a fine of $50 or in default thereof to be confined in jail one day for each dollar remaining unpaid, with costs."

Concerning the question of law that he raised, the appellant says nothing in his brief. He merely examines the evidence and argues that it is insufficient to support the judgment rendered. We do not agree. We have examined the evidence and, in our opinion, we find it sufficient.

The existence of two declarations by the same person—the accused—under oath, and which differ in a substantial point, is clear and is admitted by the very appellant. His defense consists in trying to prove the lack of a criminal intent in the commission of his act, to which end he argues:

"Now well, no part of the law provides that a person may be punished for perjury merely because he does not remember an essential part of what was heard, felt or seen by his senses.

"In the whole of his declaration that gave rise to the supposed contempt, the defendant-appellant merely stated that he could not remember having testified that one Cruz Román Rodríguez was carrying a gun in his hand on the day of the accident. The human mind is apt to be forgetful and time aids thereto, and it is quite natural that in cases of this nature one should take into consideration the intellect, the specific intent, and the time elapsed, as well as all the other circumstances, in order to determine whether a person has concealed the truth, by trying to evade it, thus to establish the criminal responsibility of that person in a crime of this nature."

We agree that a criminal intention must be proved. But we think that such an intention appears beyond a reasonable doubt from the very explanations given by the accused. Intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the defendant. All persons are of sound mind who are neither idiots, lunatics nor affected with insanity. A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another. Penal Code, section 12.

The instant defendant testified at the first trial prayed for by one of the defendants of murder, that the said two defendants were carrying a gun. The judgment was of conviction.

Called upon at the second trial he testified that he had seen only one of the defendants armed. The judgment was of acquittal as to the defendant on trial.

Let us see his own statements. We are now dealing with the trial of Cruz Román, who was acquitted.

"Q. Who were the two persons you saw running from the scene?— Of course, when we saw them they were the same two persons who had saluted us in the morning in town.

"Q. Who were they?—They were José Lugo and Cruz Román.

"Q. Did you say that when you arrived there and saw the car, that you saw them running towards town?—From the alley in back of the town.

"Q. Did you see them run with a gun?—I saw the gun of José Lugo.

"Q. And this man? (meaning the accused)—I can not say whether he was carrying a gun.

∗    ∗    ∗    ∗    ∗    ∗    ∗

"Q. Did these persons carry anything in their hands?—Seen by me, I saw one of them with a gun in his hands.

"Q. Who?—José Lugo.

"Q. And Cruz Román?—I do not know whether he was then carrying it, but I did not see it in his hand.

"Q. Do you remember having testified at the trial of José Lugo on November 1, 1937, that you had seen each with a gun in his hands? —I do not remember. I know I testified that José Lugo was carrying a gun.

"Q. Don't you remember having testified that Cruz Román was carrying a gun in his hand?—If I so testified I do not remember, and furthermore, there is my own declaration.

"Judge. Did you not testify at the former trial that both carried a gun?—If I so testified I do not remember. I testified that José Lugo was carrying a gun.

And at the former trial, Lugo's trial, Santiago admitted through his attorney having testified that "he had seen both defendants with guns in their hands."

In this prosecution for contempt Santiago also testified as follows:

"Q. So, Santiago, you admit that at the first trial, that is the one that took place in November 1937, you said that you had seen

defendant Cruz Román Rodríguez run from the scene, along a pathway, with a gun in his hand?

"Attorney Mr. Pérez Casalduc. Your Honor, that has been admitted by us.

"Judge. He has already admitted that he saw them with guns.

"Attorney Mr. Pérez Casalduc. One must find out whether his conflicting declaration was intentionally given.

"District Attorney. Do you remember that during the day of the trial, on March 23, 1938, you were asked whether you had testified differently at the first trial and you were read the record of your testimony?—Part of the testimony given by me at the first trial was read.

"Q. From the testimony read to you, did it appear that you had formerly stated that you had seen both defendants with guns in their hands, while they ran away?—According to the transcript prepared by the stenographer, it said so.

"Q. Now that your recollection has been refreshed and having seen the conflict existing between your declarations at the first and second trials, why did you, before the jury in that case, while you were testifying before that jury, why did you not then rectify your declaration so that the jury might have realized that you had been mistaken when you began to testify, so that your first declaration would not injure the interest of the People of Puerto Rico in the trial then at bar?—Had I been given the transcript of the testimony, I would have noticed the existing discrepancies as I read; had I read it once transcribed, I would have said 'what I said here is the truth.' Another person was reading to me, the stenographer, and over one year had lapsed between the trials, furthermore, one has so many things in mind at times that one may wish to say, but does not remember; anyone may forget.

"Attorney Mr. Pérez Casalduc. What length of time elapsed between the first and second declaration?—Over one year.

"Upon being questioned by the district attorney he testified:

"Q. What the district attorney asked you was why, at the second trial when your first declaration was read to you, why did you not tell the jury, 'the first one is correct and not the second one'?—Your Honor, there are times when one is in such a state of mind that even when being directly told of a thing, one can not immediately conclude anything.

"Q. Do you mean to say that you were confused?—I am going to explain to you. In school, when I was in the fifth grade, with Mr. Whittemore, the husband of the Collector of Customs Duties, I ob-

stinately maintained that three times three were six and it was necessary to bring a boy from the second grade to prove to me that three times three were nine, and then I realized my mistake.

"Q. Don't you believe that this is an important fact, since there were two persons accused, that is, having seen both of them with guns, and that you should forget it at the second trial and should testify then that you only saw one of them with a gun, don't you think that it is an important fact?—I think it is important, but one must bear in mind one thing. We were working that morning, after having spent the whole night in the paths crossing the sugar cane fields . . . it was at about five or six A. M. and then having been advised to look for the defendants, one may have testified as to something which in fact one did not perfectly remember."

Can one say, after having knowledge of said evidence, that the judge erred in considering it sufficient to conclude that the defendant acted moved by a criminal intent when he changed his testimony at the second trial?

We think not. If the record shows anything it is the care with which the judge acted. He was pained by the judgment he had to render against an officer who seemed to have repented of his acts, upon realizing the resultant consequences, and who tried to explain, as best he could. However, the judge knew how to follow his conscience, in spite of his pity, for an analysis of the evidence could show but the guilt of the defendant.

The appeal must be dismissed and the judgment appealed from affirmed.